IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br><br>v.<br><br>**THOMAS FARMER,**<br>Defendant. | Criminal Case No. 3:13-cr-00162-DRD |

### DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS

Defendant Thomas Farmer respectfully submits this supplemental motion to dismiss in order to incorporate and account for the intervening rulings of this Court. Defendant previously filed three motions to dismiss on jurisdictional grounds (Docket No. 117), on grand jury grounds (Docket No. 132), and on pleading grounds (the "Omnibus" motion) (Docket No. 133). This Court has ruled on the jurisdictional and grand jury motions, but not yet on the pleading motion. In addition, the Government has taken positions regarding the nature of its claims that are inconsistent with this Court's rulings or that need to be reconciled with either this Court's prior rulings or the Indictment. Regardless, the pending motion to dismiss should be granted in whole or in part. These court rulings and Government positions have also narrowed the remaining issues to a degree, and they also should have a corresponding impact on the relevant evidence.

1

In summary, Defendant submits that:

(i)   evidence and argument concerning the two types of antitrust violations (bid rigging and market allocation) should be excluded or the conspiracy count dismissed;

(ii)  evidence and argument regarding Trailerbridge and any alleged agreements with it should be excluded or the conspiracy count dismissed;

(iii) evidence and argument on bunker fuel surcharges should be excluded as untimely, and improper; and

(iv)  evidence and argument regarding commerce other than water transportation between Puerto Rico and the continental United States should be excluded or the conspiracy count dismissed.

Finally, Defendant respectfully submits that several other grounds for dismissal that are still pending (identified below) justify the dismissal of the Indictment.

A.   *Bid Rigging and Market Allocation Are Not Part of This Case.*

As the Court may recall, the Government instructed the grand jury that this case was limited to price-fixing and did not include charges for the other "types of agreement" that violated the Sherman Act—bid rigging and market allocation. This Court characterized this as a Government "strategy," and ruled that "as it stands, the Defendant is only charged with one kind of antitrust conspiracy, as opposed to three," that is, a price-fixing conspiracy. Order, at 9 (Docket No. 290). Based on this Government instruction to the grand jury, this Court ruled that it had "no reason to believe that the grand jury deviated from these unequivocal directives." *Id.*

2

As a result, the Government should be precluded from arguing, or presenting evidence that Defendant is guilty of either of these two types of antitrust conspiracy agreements.[1]

### B.   *Trailerbridge Is Not an Alleged Participant in the Single Conspiracy at Issue.*

Defendant's Omnibus Motion contended that the single count conspiracy charge should be dismissed because the Government previously adduced evidence in the *Peake* trial through the testimony of former Sea Star employee Peter Baci that the vessel company Sea Star had a conspiracy involving non-containerized cargo (specifically, used cars) with Trailerbridge and Crowley that Horizon did not, and could not participate in it (because Horizon could only ship container cargo).  Docket Entry No.133, at 6-11.  Defendant submitted that including Trailerbridge in the alleged same, single conspiracy with respect to cargo that could not be shipped by Horizon, rendered the Indictment defective for both multiplicity and duplicity. *Id.*

Indeed, earlier in this case, the Government, in its Answer to the Defendant's Bill of Particulars, excluded Trailerbridge from the conspiracy charged in this case.  Docket No. 54, at 2 ("The carriers involved in the conspiracy were Crowley Liner Services, Inc. ("Crowley"), Horizon, and Sea Star.").  More recently, however, the Government defended the sufficiency of the Indictment on the ground of Peter Baci's testimony regarding an alleged conspiracy to fix prices for used cars involving Trailerbridge.  Docket No. 297, at 7.

Previously, the defense challenged the Indictment on the ground that the "Government's own admissions, witness testimony, and evidence presented to this Court in a jury trial establish

---

[1] Defendant estimates that a number of Government Exhibits are related solely to bids, and therefore should be excluded.  This would reduce the number of customers at issue in the trial, and the resulting trial time.  The Government bid-related exhibits include Nos. 4 - 6, 8, 22 - 24, 26, 31 - 33, 37, 45 - 58, 60 - 63, 65, 67, 69, 78, 79, 81 - 87, 98 - 103, 113 – 116. In fairness, the Government compiled its exhibits prior to this Court's ruling.

two separate alleged conspiracies as a matter of law"—to wit a containerized cargo conspiracy allegedly involving only the two vessel companies and Crowley, and a non-containerized cargo conspiracy involving the two barge companies and only Sea Star.  The Government has now confirmed that both of these conspiracies were presented to the grand jury as part of the same conspiracy charged in Count I.  Accordingly, the Court now has before it unmistakeable evidence that the Indictment charges multiple conspiracies (a containerized cargo conspiracy and a non-containerized cargo conspiracy with different corporate particpants involving different cargo), and that it charges two conspiracies in a single count (*i.e.*, it is duplicitous). *United States v. Munoz-Franco*, 986 F. Supp. 70 (D.P.R. 1997) (dismissing conspiracy count as duplicitous because it included two distinct conspiracies).

Defendant respectfully submits that the Indictment's single count should be dismissed on both multiplicity and duplicity grounds.  But regardless, this Court should hold the Government to its Answer in which it denied that Trailerbridge was part of the conspiracy charged in this case, and thereby exclude any evidence of the alleged non-containerized cargo conspiracy allegedly among Crowley, Sea Star, and Trailerbridge.  Defendant will otherwise be prejudiced by having to defend against a separate conspiracy not involving Horizon or container cargo in this case.

C.     *Evidence and Argument on Bunker Fuel Surcharges Should Be Excluded as Untimely and Invalid.*

The Indictment alleges the conspiracy including agreements on bunker fuel surcharges, that is, the rates publicly authorized by the federal government (specifically, the United States Surface Transportation Board) for carriers to charge their customers to recover some of (but not

4

more than) their increasing fuel costs. Defendant moved to dismiss these specific charges on several grounds, including untimeliness, due process, and the *Noerr-Pennington* doctrine. Docket No. 133, at 21-25. Defendant also has an *in limine* motion directed to the exclusion of bunker fuel evidence. Docket No. 217.

The Government has provided the defense with its trial exhibits, and none support the existence of a bunker fuel conspiracy at any time relevant to this case. Initially, because administratively-approved bunker fuel surcharges are a pure cost recovery method—*i.e.*, a customer is being charged some, but not more than, the actual costs of a carrier—there is no profit or price "increase" at issue with bunker fuel surcharges. Hence, the purpose of the antitrust laws of addressing price increases is not even at issue with fuel cost recovery surcharges.[2] A contention that one carrier recovers more of its fuel costs than another carrier-or that one carriers recovers the same level of fuel costs as its competitor-is not remotely a crime, especially when it is exclusively the federal government that regulates and approves both carrier's fuel cost recovery levels.

Despite this, the Government seeks to criminalize bunker fuel surcharges by contending that the carriers somehow entered into agreements in advance of filing applications for agency approval of bunker adjustments to "match" another carrier's bunker fuel surcharge application. The sole decisionmaker in this process, however, is the U.S. Surface Transportation Board—which sets or rejects the proposed rates as lawful rates. If the Board considers matching carrier

---

[2] *See, e.g.*, *State Oil Co. v. Khan*, 522 U.S. 1, 9 (1979) ("Lower prices . . . benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition.") (citing *ARCO v. USA Petroleum*, 495 U.S. 328, 340 (1990)).

bunker fuel surcharges to be illegal or anti-competitive, it would not approve such applications, but it does.[3]

As to the Board, the water carriers are mere applicants for future government permission decisions (*i.e.*, *government* ratemaking). Without conceding that pre-application "matching agreements" regarding future government approvals of public rate adjustment applications limited to cost recovery is unlawful,[4] any such alleged matching agreements would, by definition, be inextricably tied to the bunker fuel application process. Here, the undisputed evidence is that the last time that Crowley obtained approval for a bunker fuel surcharge at the same level as the two vessel carriers was November 27, 2007—several months before the limitations period at issue in this case. Exhibit 1 (list of Crowley bunker fuel adjustments).

The Indictment in this case was returned on March 21, 2013. Given the five year limitations period, the relevant date for limitations purposes is March 21, 2008.[5] In the *Peake* trial, the Government took the position that the conspiracy terminated on April 17, 2008, the date that the Government surfaced with its simultaneous corporate searches of the carriers' headquarters. Without conceding that this is the relevant termination date, the Government has thus admitted that the conspiracy was over no later than April 17, 2008.

During the period from March 21, 2008 until April 17, 2008, Crowley's approved bunker fuel surcharge rates did not "match" the approved bunker fuel surcharges for either Sea Star or

---

[3] The Board has antitrust regulatory authority. *DHX, Inc. v. STB*, 501 F.3d 1080 (9th Cir. 2007) ("we simply note that the STB possesses ample statutory authority to address and remedy any oligopolistic concerns arising out of the water carriers' conduct under traditional antitrust principles").

[4] There is, and can be no evidence, that Crowley ever sought Board approval for a bunker fuel surcharge in excess of its internal fuel costs, and this is certainly not alleged in the Indictment.

[5] The Government bears the burden of proof that it brought its charges within the limitations period. *Grunewald v. United States*, 353 U.S. 391, 396 (1957); *United States v. Franco-Santiago*, 681 F.3d 1, 7 (1s t Cir. 2012); U*nited States v. Duhamel*, 770 F. Supp. 2d 414, 416 (D. Maine 2011).

Horizon. Indeed, the last time that Crowley even applied for a bunker fuel surcharge adjustment approval at the same level as that of the two vessel carriers was in November for a rate of $520 effective as of November 27, 2007. Exhibit 1. Because the filing of bunker fuel applications with the regulatory Board is a public act, it is one as to which this Court can take judicial notice under Fed. R. Evid. 201. *Orbubneich Medical Co. v. Boston Scientific*, 694 F. Supp. 2d 106, 111 n.11 (D. Mass. 2010) (court may consider filing with SEC on a motion to dismiss, citing *Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).[6]

This most recent so-called bunker "match" by Crowley in November 2007 is five years and approximately four months before the limitations period commences on March 21, 2008. There is no subsequent "matching" bunker fuel application by Crowley. Indeed, in December 2007, the two vessel carriers applied for, and obtained approval of a bunker fuel reduction (to $505) from the Board. Exhibits 2, 3. The next Crowley bunker fuel applications to the Board (in March 2008), are for increases to $555 and $590, neither of which were matched by either vessel carrier. Exhibit 1. This leaves the last so-called Crowley "match" of a vessel bunker fuel application in November 2007, more than five years before the March 21, 2008 return of the Indictment in this case.

Defendant has raised substantive issues concerning the legal validity of the Government's bunker fuel surcharge case. Docket Nos. 133, at 21-25; 217, at 4-11. These contentions include that: (i) Board-approved bunker fuel surcharges are valid under the antitrust laws as a matter of law (Docket No,. 217, at 10); (ii) the process of petitioning the Government to approve bunker

---

[6] *See also United States v. Mercado*, 412 F.3d 243, 247-48 (1st Cir. 2005) (federal court can take judicial notice of state court docket entries); *Torrens v. Lockheed Martin Services Group, Inc.,* 396 F.3d 468, 473 (1st Cir. 2005) ("We are free ourselves to take judicial notice of the existence of government records, Fed. R. Evid. 201(b)(2); *see U.S. v. Bello*, 194 F.3d 18, 23-24 (1st Cir. 1999)).

7

fuel adjustments is excluded from the scope of the Sherman Act, and is otherwise protected under the First Amendment *Noerr-Pennington* doctrine (Docket No. 133, at 21-23); and (iii) the Due Process Clause's vagueness doctrine bars the Government from simultaneously approving a bunker rate and making it an antitrust felony.  Docket No. 133, at 23.  Finally, as the Defendant has pointed out, the Government's claim that the rates it sets for bunker fuel surcharges are illegal, raises difficult issues that cannot possibly be subject to *per se* antitrust analysis, but rather must be reviewed, if at all, under the rule of reason, because the federal rate setting process is not a matter of longstanding judicial experience.[7]

These substantive issues present formidable legal challenges to the Government's effort to penalize conduct that it expressly permits.  Resolution of such issues, however, is probably better reserved for a case in which the Government obtains an indictment within five years of the date of a relevant bunker fuel application.  Accordingly, the bunker fuel surcharge allegations should be dismissed as time-barred.[8]


### D.     The Government Should Not Be Permitted to Amend the Indictment to Allege a Conspiracy to Violate Section 3 of the Sherman Act.

The Defendant moved to dismiss Count One on the ground that it purported to allege a conspiracy to restrain trade under Section 1 of the Sherman Act which prohibits restraints of trade "among the several States," and therefore does not include commerce between Puerto Rico

---

[7] The *per se* standard of review is limited to business conduct with which federal courts have considerable judicial experience. *Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1, 9 (1979) (citing *United States v. Topco Associates, Inc.*, 405 U.S. 596, 607-08 (1972)).  In compliance with the filed rate doctrine, courts have excluded themselves from the administrative rate making process. *Wegoland, Ltd. v. NYNEX*, 27 F.3d 17, 19 (2d Cir. 1994) (cited and quoted with approval in *Ocean Logistics v. NPR*, 38 F. Supp. 2d 77, 84 (D.P.R. 1999)).

[8] For what it is worth, none of these issues were raised in the *Peake* trial, and hence this Court has not previously addressed them.

and the continental United States because Puerto Rico is not a "State." The Government contended that Puerto Rico was a State for Section One purposes, and it had previously told the grand jury this for purposes of returning the Indictment. This Court denied the motion on the strength of prior First Circuit precedent indicating that, for Section 1 purposes, Puerto Rico had become a State. Docket No. 151 (citing *Cordova & Simonpietri Ins. Co. v. Chase Manhattan Bank, N.A.*, 649 F.2d 36 (1st Cir. 1981)). While Defendant respectfully disagrees with this result, he has been fairly heard by this Court, and does not seek to revisit this issue for any purpose other than the preservation of the record.

    In the First Circuit, however, the Government has defended its decision to claim that Puerto Rico is a State for purposes of the prosecution of Mr. Peake on the ground that the commerce at issue in that conspiracy case was not that running between Puerto Rico and the continental United States, but rather that which took place within the continental United States. Exhibit 4. Implicit, if not explicit, in this Government position is an acknowledgement that the water transportation commerce running "between" Puerto Rico and the continental United States is not subject to Section 1, but rather Section 3 of the Sherman Act. But the Indictment clearly alleges that the trade at issue is "Freight [that] was transported by water on scheduled ocean voyages between the continental United States and Puerto Rico ("Puerto Rico freight services")". Indictment, ¶ 1.

    The Government did not claim in this case that the freight at issue was either subject to Section 3 of the Sherman Act, or that it was prosecuting a Section 3 offense. For its part, the Indictment does not allege a conspiracy to violate Section 3, which presumably would call for different allegations, including that Puerto Rico is a "territory" for Section 3 purposes.

The Indictment alleges that the conspiracy at issue is for "a conspiracy to suppress and eliminate competition by agreeing to fix rates and surcharges for Puerto Rico freight services." Indictment, ¶ 5.  The Indictment further limits the "rates" at issue to rate charged for "their Puerto Rico freight services, [that is, the rates ] freight carriers charged their customers a price that consisted of a base rate and, at times, various surcharges and fees, such as a bunker fuel surcharge.").  *Id.*, ¶ 3.  The Indictment does not, for example, allege that the conspiracy involved price-fixing in connection with the intermodal costs of trucking and railroads.

Defendant respectfully submits that the Government be barred from constructively amending the Indictment to allege freight not "transported by water on scheduled ocean voyages between the continental United States and Puerto Rico," as the Indictment clearly defines the "Puerto Rican freight services" at issue in this case.  Indictment, ¶ 1.  *See, e.g.*, *United States v. Stirone*, 361 U.S. 212 (1960).

More important, the Government's recent position before the First Circuit that Section 1 applies to trucking and railroad commerce on the continental United States even if Puerto Rican freight services (*i.e.*, freight "*transported by water on scheduled ocean voyages between the continental United States and Puerto Rico*") does not fall under Section 1, creates the vice of duplicity in Count One.  That is, if Count One includes both a Section 1 conspiracy (to fix rates for land transportation within the continental United States), and a Section 3 conspiracy (to fix prices for water transportation between Puerto Rico and the continental United States) it charges two separate offenses (a Section 1 offense and a Section 3 offense).  *United States v. Munoz-Franco*, 986 F. Supp., 70, 71(D.P.R. 1997) (" Duplicity is the charging of multiple, separate offenses in the same count; a pleading deficiency which is addressed by Rule 8(a).").

Accordingly, the Defendant respectfully submits that this Court exclude from argument or evidence any allegation that the conspiracy charged in this case involves trade or rates other than those associated with freight transported on water between Puerto Rico and the continental United States.  Land transportation is both not charged in the Indictment, and if it is, makes Count One duplicitous as charging both a Section 3 and a Section 1 violation.

### E.     *The Indictment Should Be Dismissed for Defective Pleading.*

The Defendant previously moved the Court to dismiss the Indictment for additional reasons which the Court has yet to address.  These reasons are:

(i)     failure to allege the essential facts of the alleged conspiracy and instead substantially offers only legal conclusions, without any specific factual allegation as to the Defendant (Docket 133) (Omnibus Motion, at 11-14); and

(ii)    failure to allege any *mens rea*, much less the required conspiracy *mens rea* of specific intent.  *Id*. at 14-17.

### Conclusion

For the foregoing reasons, this Court should dismiss the Indictment or exclude argument and evidence that would expand or alter the charges therein as this Court has previously ruled.

Respectfully submitted,

Dated: January 23, 2015                    By*: /s/* _Terrance G. Reed_____
                                           Terrance G. Reed (Pro Hac Vice)
                                           V. Thomas Lankford (Pro Hac Vice)

>Lankford & Reed, PLLC
>120 N. St. Asaph Street
>Alexandria, VA  22314
>(Phone) 703-299-5000
>(Facsimile) 703-299-8876
>tgreed@lrfirm.net
>vtlankford@lrfirm.net
>
>By: /s/ _Mark Rosenblum____
>Mark Rosenblum (Pro Hac Vice)
>Mark Rosenblum, P.A.
>1300 Riverplace Boulevard, Suite 601
>Jacksonville, FL 32207
>(Phone) 904-396-6100
>(Facsimile) 904-346-4481
>mark@markrosenblumlaw.com
>
>By: /s/ _Joseph C. Laws_____
>Joseph C. Laws
>(USDC-PR Bar No. 120306)
>239 Arterial Hostos Avenue, Suite 402
>San Juan, PR 00918
>(Phone) 787-754-7777
>(Facsimile) 787-763-5223
>lawofficesofjosephlaws@gmail.com
>
>*Counsel for Defendant Thomas Farmer*

## **CERTIFICATE OF SERVICE**

   I hereby certify on the 23rd day of January, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Craig Y. Lee, PR Attorney #G01208
Jon B. Jacobs, PR Attorney #G01508
Trial Attorneys
U.S. Department of Justice
Antitrust Division
National Criminal Enforcement Section
450 5th St., NW Suite 11300
Washington, DC 20530
Tel: (202) 307-6694
Fax: (202) 514-6525
Email: jon.jacobs@usdoj.gov

                 By: /s/ Terrance G. Reed (Pro Hac Vice)
                 LANKFORD & REED, PLLC
                 120 N. St. Asaph Street
                 Alexandria, VA  22314
                 (Phone) 703-299-5000
                 (Facsimile) 703-299-8876
                 tgreed@lrfirm.net