# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA**
Plaintiff,

v.

Criminal No. 03:13-cr-00162 (DRD)

**THOMAS FARMER**,
Defendant.

## TRIAL MEMORANDUM OF THE UNITED STATES

Craig Y. Lee, PR Attorney #G01208
Jon B. Jacobs, PR Attorney #G01508
Diana Kane, PR Attorney #G01913
Sonia Mittal, PR Attorney #G01914
Trial Attorneys
U.S. Department of Justice, Antitrust Division
450 Fifth Street N.W., Suite 11300
Washington, DC  20530
Tel:  (202) 307-6694
Fax: (202) 514-6525
Email: craig.lee@usdoj.gov

## TABLE OF CONTENTS

I.      INTRODUCTION............................................................................................. 1

II.     STATEMENT OF THE CASE.......................................................................…..1

        A.      Defendant Thomas Farmer.....................................................................… 1

        B.      Puerto Rico Freight Services.................................................................... 2

        C.      The Conspiracy...................................................................................….3

III.    LAW APPLICABLE TO SHERMAN ACT OFFENSE...................................4

        A.      Fixing Rates and Surcharges Are *Per Se* Violations of Section 1 of
                the Sherman Act.................................................................................... 5

        B.      The Agreement Is the Crime..................................................................6

        C.      *Per Se* Unlawful Agreement Need Not Be Explicit or Formal………...……….7

        D.      Minor Participation Is Sufficient to Establish Participation in a Conspiracy...….7

        E.      A Person Who Joins a Conspiracy is Bound by All That Has Gone on Before,
                and Participation Continues Absent Affirmative Evidence of Withdrawal……… 9

        F.      A Single Conspiracy May Include Sub-Agreements……………………………10

        G.      Not All Means and Methods Charged in the Indictment Must Be Proved……… 10

IV.     ELEMENTS OF THE OFFENSE……………………………………………...11

        A.      Defendant Knowingly Participated in the Conspiracy………………………… 12

        B.      Effect on Interstate Commerce…………………………………………….. 12

V.      EVIDENTIARY ISSUES—WITNESS TESTIMONY………………………13

        A.      Circumstantial Evidence May Be Used To Prove a Sherman Act
                Conspiracy…………………………………………………………… 13

        B.      Admissibility of Acts and Declarations of Coconspirators as Verbal Acts…… 14

        C.      Admissibility of Acts and Declarations of Coconspirators under
                Federal Rule of Evidence 801(d)(2)(E)……………………………………… 14

i

D.      Admission by Party Opponent……………………………………………..…16

E.      Hearsay Statements Are Inadmissible When Offered by Defendant……………16

F.      Prior Consistent Statements………………………………………………….. 17

G.      Indefiniteness of Recollection Is Not a Bar to Testimony……………………… 18

H.      Evidence Predating the Conspiracy Charging Period……………………………20

I.      Limitations of Defendant's Character Evidence…………………………………24

J.      Character Evidence Regarding Testifying Witnesses…………………………....25

VI.     **EVIDENTIARY ISSUES—DOCUMENTS**…………………………………………….27

A.      Authentication of Documents……………………………………………….... 27

B.      Business Records Admissibility………………………………………………… 28

C.      Adoptive Admissions Are Admissible under Federal Rule of Evidence 801(d)(2)(B) ……………………………………………………………………..…29

D.      Vicarious Admissions Are Admissible under Federal Rules of Evidence 801(d)(2)(C) and 801(d)(2)(D)…………………………………………………..… 30

E.      Coconspirator Records Are Admissible under Federal Rule of Evidence 801(d)(2)(E)………………………………………………………………………30

F.      Summary Charts Are Admissible under Federal Rule of Evidence 1006……..…31

## I.        INTRODUCTION

Between May 2002 and April 2008, the four major shipping companies providing service between the continental United States and Puerto Rico participated in a price-fixing conspiracy that affected the price of virtually all Puerto Rico freight shipments.  The conspiracy affected over a billion dollars of freight and victimized virtually all companies who shipped freight to or from Puerto Rico.  Three corporate conspirators—Sea Star Line ("Sea Star"), Horizon Lines ("Horizon"), and Crowley Liner Services ("Crowley")—pled guilty and were sentenced to pay substantial criminal fines for their participation in the Puerto Rico water freight conspiracy.  Likewise, five Sea Star and Horizon executives pled guilty to conspiracy-related conduct and served lengthy jail sentences.  A sixth, Sea Star President Frank Peake, was tried and convicted for his participation in the conspiracy.[1]

This trial will determine whether defendant Thomas Farmer, Crowley's Vice-President of Pricing during the conspiracy, knowingly participated in that conspiracy.  The Indictment charges that, from at least as early as mid-2005, and continuing until at least April 2008, defendant and his coconspirators entered into and participated in a conspiracy to suppress and eliminate competition by agreeing to fix rates and surcharges for Puerto Rico freight services.  This memorandum addresses legal and evidentiary issues that may arise at trial.

## II.       STATEMENT OF THE CASE

### A.        Defendant Thomas Farmer

During the period charged in the Indictment, defendant was Vice President, Price and Yield Management, for Crowley.  In this position, defendant had day-to-day responsibility for

---

[1] On December 6, 2013, Frank Peake was sentenced to 60 months' imprisonment.  His conviction is pending appeal.

Crowley's pricing for shipping freight between San Juan, Puerto Rico and the continental United States.  In 2005, defendant had more than 25 years experience with Crowley.

### B.    Puerto Rico Freight Services

The market for Puerto Rico freight services is a multi-billion dollar industry.  It is governed by the Jones Act, which limits water freight transportation between the United States and its non-contiguous states and territories to U.S.-owned, built, manned, and flagged ships. The Jones Act applies to the shipping trade lane between the continental United States and Puerto Rico.  As a result, only four companies—Crowley, Horizon, Sea Star, and Trailerbridge— provided freight shipping services in the Puerto Rico trade lane between 2002 and 2008.  The three largest carriers were Crowley, Horizon, and Sea Star, with a combined market share of greater than 80% during that time period.  Although the carriers maintained publicly filed tariff rates applicable to shipments in the Puerto Rico trade lane, during the relevant time period approximately 90% of that freight moved pursuant to private contracts that the carriers negotiated, usually on an annual basis, with their customers.

The carriers charged their customers a variety of fees and surcharges for their services. Because most freight was transported in shipping containers, customers were typically charged a port-to-port base ocean freight rate on a per-container basis.  The container rate varied based on the container size (which ranged from 20 feet to 53 feet) and type (dry or refrigerated ("reefer")). Additionally, customers were charged a fuel surcharge (called a "bunker adjustment factor" or "BAF") and security surcharge on a per-container basis.  If customers utilized carrier-provided trucking services to transport the containers between the port and a point of origin/destination in the continental United States, the customer would incur an intermodal charge, as well as an

intermodal fuel surcharge.  During the course of the conspiracy, the coconspirators colluded on each of these components of ocean shipping and intermodal rates.

C.     **The Conspiracy**

The conspiracy initially involved only Horizon and Sea Star, but later expanded to include defendant's company, Crowley.  It was carried out through face-to-face meetings in secret locations, telephone calls, and emails, and it was implemented through a number of related means and methods that resulted in significant increases in virtually all aspects of the rates charged to customers.  The conspirators agreed to stay away from each other's important accounts, agreed on price increases to specific customers, and agreed on increases in the bunker fuel surcharges (and on the timing of those increases) applying to many different customers in the Puerto Rico trade lane.

Because the conspiracy began in mid-2002, it was well established by the time defendant joined it in mid-2005.  Horizon and Sea Star both operated faster, self-propelled ships that took less time to transport cargo between Puerto Rico and the rest of the United States.  Because Crowley used tug boats that pulled barges, its service times were slower.  As a result, there was usually a "gap" or "spread" between the higher rates charged by the fast-ship companies and the lower rates charged by a barge company like Crowley.  Customers were willing to shift their cargo volume between the faster, more expensive ships and the slower, more affordable barges depending on how fast they needed to get their cargo to Puerto Rico and the difference between the two rates.  If the gap grew too large, customers generally shifted more of their volume to the cheaper barge service in order to save money.

That is what began happening in mid-2005.  By that time, Horizon and Sea Star had been so successful in raising their rates because of the conspiracy that they began losing too much

3

business to Crowley.  They needed to get Crowley involved in the conspiracy as well, so its rates would increase and the pricing "gap" would shrink.  And getting Crowley involved meant getting defendant, Tom Farmer, involved.  He was Crowley's Vice-President for Pricing, and had day-to-day responsibility for setting the company's prices in the Puerto Rico trade lane.

Once he joined the conspiracy, defendant communicated with his counterparts at Horizon and Sea Star to increase prices in the Puerto Rico trade lane.  He agreed to price increases to specific customers, agreed on increases in the bunker fuel surcharges (and on the timing of those increases), and agreed to stay away from his competitors' important customer accounts.  During the time he participated, the conspiracy affected billions of dollars of Puerto Rican freight services.

## III.   LAW APPLICABLE TO SHERMAN ACT OFFENSE

The Sherman Act, Title 15 of the United States Code, Section 1, states in pertinent part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . . is declared to be illegal.  Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony . . . .

15 U.S.C § 1 (2012).  An agreement restraining trade does not violate the Sherman Act unless it does so unreasonably.  *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 66 (1911).  Certain types of agreements, however, are considered *per se* violations of the Sherman Act, requiring no proof of unreasonableness, "because of their pernicious effect on competition and lack of any redeeming virtue."  *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958), *superseded by statute on other grounds*.  The *per se* rule is a substantive rule of law, not merely an evidentiary presumption, that governs those restraints which the courts have "conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have

4

caused or the business excuse for their use." *Id. See FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 435-36 (1990).

In this case, defendant is charged with joining a conspiracy to restrain trade by agreeing to fix rates and surcharges for Puerto Rico water freight services. As this Court has already ruled in granting the government's motion *in limine* to preclude evidence and argument about economic justification, such evidence is not permitted because "the instant indictment alleges a per se violation of the Sherman Act." (Dkt. 126).

A.     **Fixing Rates and Surcharges Are *Per Se* Violations of Section 1 of the Sherman Act**

Conspiracies among competitors to fix prices have long been held to be *per se* violations of the Sherman Act. *N. Pac. Ry.*, 356 U.S. at 5; *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940); *United States v. Trenton Potteries Co.*, 273 U.S. 392, 397-98 (1927). An agreement to fix even a single component or element of an overall price, including rates and surcharges, is also *per se* illegal. For example, the Supreme Court has held that fixing real estate brokerage fees, a component of the total purchase price of a house, is illegal *per se* under Section 1 of the Sherman Act. *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246 (1980). Similarly, the Fourth Circuit found an illegal *per se* price-fixing agreement where an electrical trade association and an electrical workers union agreed to add a 1% charge to all invoices to support an industry fund. *Nat'l Elec. Contractors Ass'n v. Nat'l Constructors Ass'n*, 678 F.2d 492, 501 (4th Cir. 1982). In another case, a district court found a properly pleaded "horizontal price fixing scheme among buyers" of coupon-processing services who conspired to fix the shipping costs of coupons, reasoning that "[t]he shipping cost associated with redeeming coupons is one of many inputs that make up [the] manufacturers' products." *Int'l Outsourcing Servs. v. Blistex, Inc.*, 420 F. Supp. 2d 860, 865 (N.D. Ill. 2006).

### B.     The Agreement Is the Crime

A conspiracy under the Sherman Act is like any other criminal conspiracy.  It is a combination of two or more persons or entities engaged in concerted action to accomplish an illegal purpose or to accomplish a legal purpose by illegal means.  *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 465-66 (1921), *superseded by statute on other grounds*.  However, unlike the general criminal conspiracy statute, 18 U.S.C. § 371, the Sherman Act does not require proof of an overt act in furtherance of the conspiracy.  *Nash v. United States*, 229 U.S. 373, 378 (1913) (holding that the Sherman Act "does not make the doing of any act other than the act of conspiring a condition of liability").  Instead, the conspiratorial agreement itself constitutes the complete criminal offense.  *Socony-Vacuum*, 310 U.S. at 224 n.59 ("[I]t is likewise well settled that conspiracies under the Sherman Act are not dependent on any overt act other than the act of conspiring.") (citing *Nash*, 229 U.S. at 378).

Therefore, it is not necessary to allege or to prove any overt acts in furtherance of the conspiracy.  *Id.*  Although it has no obligation to do so, the government will introduce evidence of acts that furthered the Puerto Rico water freight conspiracy.  Any overt acts that the government chooses to introduce need not be illegal *per se* if they were acts committed in forming or furthering the conspiracy.  *Cramer v. United States*, 325 U.S. 1, 7 (1945) ("An overt act in itself may be a perfectly innocent act standing by itself; it must be in some manner in furtherance of the crime.") (quoting *United States v. Fricke*, 259 F. 673, 677 (S.D.N.Y. 1919)).  *See also Omnicare, Inc. v. United Health Grp., Inc.*, 629 F.3d 697, 709 (7th Cir. 2011) ("Information exchange can help support an inference of a price-fixing agreement . . . ."); *In re Flat Glass Antitrust Litigation,* 385 F.3d 350, 368-69 (3d Cir. 2004) (evidence of exchanges of price information can support inference of price-fixing conspiracy); *Todd v. Exxon Corp.*, 275

6

F.3d 191, 198 (2d Cir. 2001) (Sotomayor, J.) (same); *In re Petroleum Products Antitrust Litigation,* 906 F.2d 432, 445-50 (9th Cir. 1990) (same); *In re Titanium Dioxide Antitrust Litigation*, 959 F. Supp. 2d 799, 829 (D. Md. 2013) ("Ambiguous statements by competitors, taken as a whole, may support the inference of a price-fixing conspiracy.").

### C.   *Per Se* Unlawful Agreement Need Not Be Explicit or Formal

The evidence need not show that the members of the conspiracy entered into an express or formal agreement or that they directly stated (either orally or in writing) the object or purpose to be accomplished.  *See Am. Tobacco Co. v. United States*, 328 U.S. 781, 809-10 (1946); *Direct Sales Co. v. United States*, 319 U.S. 703, 714 (1943); *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 226-27 (1939).  All that the evidence must show is that the conspirators, explicitly or tacitly, came to a mutual understanding to try to accomplish a common unlawful plan—in this case, to suppress and eliminate competition for Puerto Rico water freight services.  *See United States v. Paramount Pictures*, 334 U.S. 131, 142 (1948); *Am. Tobacco Co.*, 328 U.S. at 810; *Interstate Circuit*, 306 U.S. at 226-27.

### D.   Minor Participation Is Sufficient to Establish Participation in a Conspiracy

The evidence will show that defendant was the primary, day-to-day contact at Crowley for his counterparts and coconspirators at Horizon and Sea Star.  It will also show that, as Crowley's Vice-President for Pricing, defendant had substantial authority for recommending and setting Crowley's prices for shipping freight in the Puerto Rico trade lane.  Yet defendant was not the only person involved in setting Crowley's prices.  And he did not participate in each and every means and methods of the conspiracy, nor did he participate for as long as others did.

The government need not prove that defendant was the most culpable person who participated in the conspiracy, or even that he was a major participant.  A defendant participates

in a conspiracy even if he has only a slight connection to it. "Once a conspiracy is established, as well as defendant's intent to further it, any connection between the defendant and the conspiracy, even a slight one, will be sufficient to establish knowing participation." *United States v. Brandon*, 17 F.3d. 409, 428 (1st Cir. 1994); *United States v. Marsh*, 747 F.2d 7, 13 (1st Cir. 1984). "The term 'slight connection' means that a defendant need not have known all the conspirators, participated in the conspiracy from its beginning, participated in all its enterprises, or known all its details." *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001). *See also United States v. Skillman*, 922 F.2d 1370, 1373 (9th Cir. 1990) ("This slight connection may be demonstrated by proof of the defendant's willful participation in the illegal objective with the intent to further some purpose of the conspiracy."). Moreover, the coconspirators need not know of each conspiratorial transaction. *Blumenthal v. United States*, 332 U.S. 539, 556-57 (1947). *See also United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 125 (7th Cir. 1978) ("That many of the conspirators did not know each other, had no direct contact with each other, and were not always interested in the same customers was probably as immaterial to the conspirators as it is to us now.").

Even "a single act may involve a person in a conspiracy if from the act an intent to participate may reasonably be inferred." *United States v. Harris*, 409 F.2d 77, 83 (4th Cir. 1969). *See United States v. Davis*, 623 F.2d 188, 191 (1st Cir. 1980); *Consolidated Packaging*, 575 F.2d at126. Thus, whether a defendant's participation in the conspiracy is major or minor is irrelevant. The only requirement is that participation be willful and in furtherance of the conspiracy.

**E.      A Person Who Joins a Conspiracy is Bound by All That Has Gone on Before, and Participation Continues Absent Affirmative Evidence of Withdrawal**

"[O]nce having entered into a common scheme with the other conspirators, [the defendant] is bound by all acts committed by them in furtherance thereof, including those acts committed without his knowledge before he joined the conspiracy." *United States v. Cintolo*, 818 F.2d 980, 998 (1st Cir. 1987) (quoting *United States v. Brasseaux*, 509 F.2d 157, 161 (5th Cir. 1975)).  The First Circuit has held that one joining a conspiracy is also "deemed to have adopted the prior acts and declarations of coconspirators, made after the formation and in furtherance of the conspiracy." *Id.* at 997.  "[A] conspiracy is like a train.  When a party knowingly steps aboard, he is part of the crew, and assumes conspirator's responsibility for the existing freight—or conduct—regardless of whether he is aware of just what it is composed." *Id.* (quoting *United States v. Baines*, 812 F.2d 41, 42 (1st Cir. 1987)).  Nor does the government need to prove that a defendant knew every detail of the conspiracy or had contact with every other coconspirator.  *United States v. LiCausi*, 167 F.3d 36, 45 (1st Cir. 1999).

A defendant's participation is presumed to have continued throughout the conspiracy's entire period unless he produces affirmative evidence of withdrawal—for example, evidence that he tried to defeat or disavow the object of the conspiracy in a manner reasonably calculated to reach his coconspirators.  *See United States v. United States Gypsum Co.*, 438 U.S. 422, 464-65 (1978); *Hyde v. United States*, 225 U.S. 347, 369-70 (1912) (holding that participation in a conspiracy continues until affirmative withdrawal).  The First Circuit has held that withdrawal is a "demanding defense" that requires "affirmative evidence of an effort to defeat or disavow or confess." *United States v. Potter*, 463 F.3d 9, 20 (1st Cir. 2006).  The First Circuit has elaborated that a withdrawal defense typically requires evidence of "either a full confession to authorities or a communication by the accused to his co-conspirators that he has abandoned the

enterprise and its goals." *United States v. Pizarro-Berrios*, 448 F.3d 1, 10 (1st Cir. 2006)

(quoting *United States v. Piper*, 298 F.3d 47, 53 (1st Cir. 2002)).  *See United States v.*

*Fernandez-Torres*, 604 F. Supp. 2d 356, 359 (D.P.R. 2008).  Absent proof that a conspirator has

withdrawn from the conspiracy, he is liable for all acts performed in furtherance of the

conspiracy by the other conspirators.  *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946);

*United States v. Vázquez-Botet*, 532 F.3d 37, 62 (1st Cir. 2008).

     **F.     A Single Conspiracy May Include Sub-Agreements**

     A conspiracy that "contemplates bringing to pass a continuous result that will not

continue without the continuous co-operation of the conspirators to keep it up" is a single

continuing conspiracy.  *United States v. Kissel*, 218 U.S. 601, 607 (1910).  This is true even if

the conspiracy charged embraces several lesser crimes, or sub-agreements.  The First Circuit

instructs that factors such as "the nature, motive, design, implementation, and logistics of the

illegal activities as well as the scope of coconspirator involvement" are critical in an inquiry of

the jury's finding of a single conspiracy.  *LiCausi*, 167 F.3d at 45.  A finding of a single

conspiracy will be left standing if the totality of the evidence shows "that all of the alleged

coconspirators directed their efforts towards the accomplishment of a common goal or overall

plan."  *Id.* (quoting *United States v. Drougas*, 748 F.2d 8, 17 (1st Cir. 1984)).

     **G.     Not All Means and Methods Charged in the Indictment Must Be Proved**

     The evidence need not establish that all of the means or methods set forth in the

Indictment were agreed upon or utilized to carry out the conspiracy.  *Socony-Vacuum*, 310 U.S.

at 249-50.  "And where an indictment charges various means by which the conspiracy is

effectuated, not all of them need be proved."  *Id.* (citing *Nash v. United States*, 229 U.S. 373, 380

(1913).  *See also United States v. Ayala*, 289 F.3d 16, 22 (1st Cir. 2002) ("A part of the

indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as a useless averment that may be ignored.") (quoting *United States v. Miller*, 471 U.S. 130, 136 (1995)); *Castle v. United States*, 287 F.2d 657, 660 (5th Cir. 1961) ("It is not essential that everything in an indictment be proved.  It is necessary to prove only so much thereof as establishes a violation of the statute involved."), *vacated on other grounds*, 368 U.S. 13 (1961).  Nor must the evidence show that all means or methods agreed upon were actually used or put into operation, see, for example, *Trenton Potteries*, 273 U.S. at 402, or that all persons alleged to have been conspirators were such.  *See Weiss v. United States*, 103 F.2d 759, 760 (3d Cir. 1939).  The government is also not required to prove that the conspiracy continued for the duration charged in the indictment.  *Pittsburgh Plate Glass Co. v. United States*, 260 F.2d 397, 401 (4th Cir. 1958), *aff'd*, 360 U.S. 395 (1959); *Cooper v. United States*, 91 F.2d 195, 198 (5th Cir. 1937).  As stated above, the conspiratorial agreement is itself the complete offense, for example, *Nash*, 229 U.S. at 378, rendering the charged time period "surplusage" that the government does not have to prove.  *See United States v. Kartman*, 417 F.2d 893, 894 (9th Cir. 1969) (citing *Socony-Vacuum*, 310 U.S. at 222).

## IV.    ELEMENTS OF THE OFFENSE

To convict defendant, the government must prove that: (1) the conspiracy charged in the Indictment existed at or about the time alleged; (2) defendant knowingly—that is, not by some mistake or accident—became a member of the conspiracy; and (3) the conspiracy concerned goods and services in interstate commerce.  *See Interstate Circuit*, 306 U.S. at 227 ("Acceptance . . . of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce, is sufficient to establish an unlawful conspiracy under the Sherman Act.").

11

A.      **Defendant Knowingly Participated in the Conspiracy**

To prove that defendant violated the Sherman Act with the requisite intent, the government must prove that he knowingly participated in the charged conspiracy with a consciousness of its general nature, extent, and objective.  *Blumenthal v. United States*, 332 U.S. 539, 556-57 (1947).  To act "knowingly" means to act voluntarily and intentionally, and not because of mistake or accident.  *See, e.g., United States v. Thompson*, 449 F.3d 267, 275 (1st Cir. 2006).

B.      **Effect on Interstate Commerce**

The jurisdictional reach of the Sherman Act is as inclusive as Congress's power to regulate under the Commerce Clause of the Constitution.  *Summit Health Ltd. v. Pinhas*, 500 U.S. 322, 328-29 (1991).  An essential element of proof in a Sherman Act case is that the illegal activity had a relationship to interstate commerce.  Proof that the conspirators' business activities took place in the flow of interstate commerce (the "in commerce" theory) or were likely to have "an effect on some other appreciable activity demonstrably in interstate commerce" (the "effect on commerce" theory) meets this requirement.  *McLain v. Real Estate Bd. Of New Orleans, Inc.*, 444 U.S. 232, 242 (1980).

Under the "in commerce" theory, the test is qualitative rather than quantitative.  So long as defendant's business activity is in interstate commerce, "no specific magnitude need be proved."  *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 785 (1975), *abrogated in part on other grounds by S. Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 60-61 (1985).  At trial, the government will prove that the conspiracy operated directly "in" interstate commerce.  The shipment of freight between the continental United States and Puerto Rico constitutes interstate commerce because Puerto Rico is a "state" for purposes of Section 1 of the

Sherman Act. *Cordova & Simonpietri Insurance Agency v. Chase Manhattan Bank,* 649 F.2d 36, 42 (1st Cir. 1981). Moreover, the conspiracy affected commerce within the continental United States because defendant and his coconspirators "transported substantial volumes of freight in a continuous and uninterrupted flow of interstate commerce between various states and Puerto Rico" (Dkt. 1 ¶ 11) (emphasis added), and bills of lading and invoices for payment were "transmitted in interstate commerce between and among offices of the defendant and his corporate co-conspirators and their customers located in various states and Puerto Rico." *Id.* at ¶ 10 (emphasis added).

## V.    EVIDENTIARY ISSUES—WITNESS TESTIMONY

Below are evidentiary issues which may be relevant to the trial of this case.

### A.    Circumstantial Evidence May Be Used To Prove a Sherman Act Conspiracy

Because of the secret and often sophisticated nature of conspiracies, they are often proved by inferences drawn from relevant circumstantial evidence, including the conduct of the defendant charged. *See United States v. Parke, Davis & Co.*, 362 U.S. 29, 44 (1960). Evidence is relevant as long as it assists in proving that a conspiracy existed, that defendant knew of it, and that defendant voluntarily joined the conspiracy. *See, e.g., United States v. Lizardo*, 445 F.3d 73, 81 (1st Cir. 2006). In addition, courts have routinely admitted testimony covering the conspirators' *modus operandi* and course of conduct, even if unrelated to specific conspiratorial episodes. *See, e.g., United States v. Santiago*, 560 F.3d 62, 66-67 (1st Cir. 2009) (admitting evidence of code words used in drug conspiracy as a practice of the conspiracy); *United States v. Burchfield*, 719 F.2d 356, 358 (11th Cir. 1983) (citing cases).

### B.      Admissibility of Acts and Declarations of Coconspirators as Verbal Acts

"Verbal acts," such as a statement whose utterance gives rise to legal consequences, are admissible as nonhearsay.  *See* Fed. R. Evid. 801(a),(c); *United States v. Diaz*, 597 F.3d 56, 65 n.9 (1st Cir. 2010).  Words of agreement are examples of a "verbal act," and their admissibility is not affected by the hearsay rule.  *Id.*; *United States v. Hicks*, 848 F.2d 1, 3 (1st Cir. 1988).  When a defendant directs, orders, or instructs another person to perform or to refrain from performing an act, such statements are generally not capable of being either true or false, and therefore are typically not offered for the truth of the matter asserted.  *See e.g., Id.*; *Rivot-Sanchez v. Warner Chilcott Co.*, 707 F. Supp. 2d 234, 262 (D.P.R. 2010) (Dominguez, J.) (holding that threats by a corporate defendant's executives to fire plaintiff were admissible to the extent that they were offered as verbal acts).

### C.      Admissibility of Acts and Declarations of Coconspirators under Federal Rule of Evidence 801(d)(2)(E)

Evidence of any act or declaration by one coconspirator, committed in furtherance of the conspiracy, is admissible against all coconspirators.  *See* Fed. R. Evid. 801(d)(2)(E); *United States v. Nixon*, 418 U.S. 683, 701 (1974); *United States Gypsum Co.*, 333 U.S. at 388-89; *United States v. Campa*, 679 F.2d 1006, 1011 (1st Cir. 1982) (listing cases); *see United States v. Colón-Díaz*, 521 F.3d 29, 35-36 (1st Cir. 2008).  As such, whenever a member of a conspiracy acts or speaks to further the common illegal objective, that person is considered the agent of all the others and is liable for the acts and declarations of his coconspirators.  *Anderson v. United States*, 417 U.S. 211, 218-19 (1974).  Further, "declarations and acts of the various members [of the conspiracy], even though made or done prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of co-conspirators in aid of the conspiracy" *U.S. Gypsum Co.*, 333 U.S. at 393.

14

In this circuit, before a coconspirator statement may be admitted, the court must determine by a preponderance of the evidence, "that a conspiracy embracing both the declarant and the defendant existed, and that the declarant uttered the statement during and in furtherance of the conspiracy." *United States v. Mitchell*, 596 F.3d 18, 23 (1st Cir. 2010) (quoting *United States v. Bradshaw*, 281 F.3d 278, 283 (1st Cir. 2002).  The finding is a preliminary question of admissibility to be determined solely by the court under Federal Rule of Evidence 104(a). *Bourjaily v. United States*, 483 U.S. 171, 176-78 (1987).  In the First Circuit, this determination is known as a *Petrozziello* ruling.  *See United States v. Capelton*, 350 F.3d 231, 241-42 (1st Cir. 2003); *Colón-Díaz*, 521 F.3d at 36 (citing *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977)).  In making this preliminary determination, the court "may examine the hearsay statements sought to be admitted," and it need not rely solely on "independent" evidence to decide whether the offering party has established the existence of a conspiracy. *Bourjaily*, 483 U.S. at 180-81.  As the Supreme Court stated in *Bourjaily*, "there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy."  *Id.* at 180.

The First Circuit has held that while a court may consider the statement at issue in a *Petrozziello* ruling, the proponent must also "[i]ntroduce some extrinsic evidence . . . sufficient to delineate the conspiracy and corroborate the declarant's and the defendant's roles in it," and that the court's determination must rest at least in part on the corroborating evidence.  *Mitchell*, 596 F.3d at 23 (quoting *United States v. Piper*, 298 F.3d 47, 52 (1st Cir. 2002).  The trial court has wide discretion as to the order of proof, and the court may admit coconspirator statements conditionally subject to the later submission of necessary evidence and a final determination at

15

the close of all the evidence.  *Capelton*, 350 F.3d at 241 (citing *United States v. Isabel*, 945 F.2d 1193, 1199 n.10 (1st Cir. 1991)); *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir. 1980).

In this case, the requirements for admission of statements as coconspirator statements under Rule 801(d)(2)(E) are easily met.  The corporate guilty pleas of Sea Star, Horizon, and Crowley, as well as the individual guilty pleas of Peter Baci, Gabriel Serra, Gregory Glova, Kevin Gill, and Alexander Chisholm, are extrinsic evidence both of the existence of a price-fixing conspiracy and participation by the pleading individuals in that conspiracy.  The statements that will be offered at trial will, by themselves or supported by testimony of the pleading witnesses, satisfy the "in furtherance" element of Rule 801(d)(2)(E).

### D.    Admission by Party Opponent

Under Federal Rule of Evidence 801(d)(2)(A), an out of court statement is admissible if it is offered against the party who made the statement and is that party's own statement.  *See, e.g., United States v. Aviles-Colon*, 536 F.3d 1, 23 (1st Cir. 2008); *see also United States v. Perez-Montanez*, 202 F.3d 434, 439 (1st Cir. 2000) (affirming district court's ruling that testimony by a government witness that he heard defendant refer to a "hidden car" and stonewalling the police in a carjacking prosecution was both an admission by party opponent and a coconspirator statement.)  Accordingly, the government will offer into evidence statements made by defendant—both oral statements made to others and written statements made in emails.

### E.    Hearsay Statements Are Inadmissible When Offered by Defendant

Because a defendant's statements are admissible only if offered against him, a defendant may not elicit his own prior statements—exculpatory or otherwise—through other witnesses. Fed. R. Evid. 801(d)(2)(A); *see United States v. Rivera-Hernandez*, 497 F.3d 71, 82-83 (1st Cir. 2007) (holding inadmissible an exculpatory statement made by defendant that defendant

16

attempted to elicit at trial through the testimony of an alleged coconspirator); *United States v. Palow*, 777 F.2d 52, 56 (1st Cir. 1985) ("The requirement of Rule 801(d)(2)(A) that an admission be offered against a party is designed to exclude the introduction of self-serving statements by the party making them."); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.").

F.     **Prior Consistent Statements**

Federal Rule of Evidence 801(d)(1)(B) provides that a prior consistent statement of a witness is admissible as substantive evidence when it is offered to rebut an express or implied charge against that witness of recent fabrication, improper influence, or motive. *See United States v. Awon*, 135 F.3d 96, 99-100 (1st Cir. 1998), *abrogated in part on other grounds by Piper*, 298 F.3d. The trial judge is accorded great discretion in determining the admissibility of evidence under this rule. *United States v. DeSimone*, 488 F.3d 561, 574 (1st Cir. 2007) (holding that the district court's decision to admit a prior consistent statement is reviewed for abuse of discretion); *United States v. Prieto*, 232 F.3d 816, 819 (11th Cir. 2000); *United States v. Hamilton*, 689 F.2d 1262, 1273 (6th Cir. 1982) ("Broad discretion is given to the trial court regarding the admission of prior consistent statements.").

Prior consistent statements are generally admissible even if made after the initial alleged inconsistent statement. *See United States v. Stover*, 329 F.3d 859, 867 (D.C. Cir. 2003). In this circumstance, however, the statement is introduced not as substantive evidence, but for rehabilitation of the witness following cross-examination. *Id.*; *United States v. Simonelli*, 237 F.3d 19, 27 (1st Cir. 2001) ("[W]here prior consistent statements are not offered for their truth but for the limited purpose of rehabilitation, . . . Rule 801(d)(1)(B) and its concomitant

restrictions do not apply.  When the prior statements are offered for credibility, the question is

not governed by Rule 801.") (quoting *United States v. Ellis*, 121 F.3d 908, 919 (4th Cir. 1997)).

The statement sought to be admitted must have probative value that bears on credibility beyond

merely showing repetition.  *Simonelli*, 237 F.3d at 27-28.  A prior consistent statement may also

be introduced to amplify or clarify whether the alleged inconsistent statement is indeed

inconsistent.  *Id.*

### G.   Indefiniteness of Recollection Is Not a Bar to Testimony

The Indictment charges that defendant joined an ongoing conspiracy in 2005.  As such,

the witnesses in this case may testify to conversations and events occurring several years ago.

Some of the witnesses may qualify their testimony by saying, "I think," "I believe," or "to the

best of my recollection."  Such qualifications go to the weight of the testimony, not its

admissibility.  *See Hallquist v. Local 276, Plumbers & Pipefitters Union*, 843 F.2d 18, 24 (1st

Cir. 1988) ("The *extent* of a witness' knowledge of matters about which he offers to testify goes

to the weight rather than the admissibility of the testimony."); *United States v. Rodriguez*, 968

F.2d 130, 143 (2d Cir. 1992) (holding that a witness's testimony regarding an identification card

should not be excluded notwithstanding the fact that the witness could not exactly recall the

name on the card); *Pass v. Firestone Tire & Rubber Co.*, 242 F.2d 914, 918 (5th Cir. 1957)

(stating that it is "not essential that [the witness's] observation be positive or such as to permit

him to testify with absolute certainty").

Federal Rule of Evidence 602 requires only that a witness have personal knowledge of

the matters about which he testifies, not perfect or certain recollection.  *See United States v.

Evans*, 484 F.2d 1178, 1181-82 (2d Cir. 1973); *Flintkote Co. v. Lysfjord*, 246 F.2d 368, 383 n.16

(9th Cir. 1957).  All that is required for the testimony to be admissible is evidence that the

witness perceived or observed the matters about which he testifies. *Hallquist*, 843 F.2d at 24 ("Evidence is inadmissible under this rule only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testified to.")

"Absolute certainty" is not required. *M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc'y Inc.*, 681 F.2d 930, 932 (4th Cir. 1982) (per curiam) ("Rule 602 . . . does not require that the witness' knowledge be positive or rise to the level of absolute certainty. Evidence is inadmissible under this rule only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to."); *see also United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999) (holding that "inferences reached from a witness's observations need not reach the level of absolute certainty to be admissible"); *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997) (holding that Rule 602 "does not require that the witness' knowledge be positive or rise to the level of absolute certainty").

Similarly, testimony based on imperfect recollection is admissible over objections that it is "opinion" or "speculation" whenever the witness either observed or participated in the conduct about which he is testifying. The witness's lack of definitiveness is for the jury to evaluate. *United States v. Cranston*, 686 F.2d 56, 60 n.1 (1st Cir. 1982) (permitting witness testimony regarding belief that a telephone call was with a certain individual, although witness was not certain); *United States v. Lena*, 497 F. Supp. 1352, 1362 (W.D. Pa. 1980), *aff'd*, 649 F.2d 861 (3d Cir. 1981) (holding that defects in recollection are proper subjects for cross-examination but do not render testimony inadmissible).

### H.      Evidence Predating the Conspiracy Charging Period

The United States plans to introduce at trial a limited amount of evidence reflecting meetings and communications between coconspirators occurring before the charging period to provide the jury with a complete picture of the conspiracy.  Courts have routinely admitted evidence predating the conspiracy period charged in an indictment.  *See, e.g.*, *United States v. Ramnath*, 365 F. App'x 230, 232 (1st Cir. 2010) (Souter, J.) (evidence of unlawful drug transaction on day before conspiracy was charged admissible to identify alleged coconspirator as a drug dealer); *United States v. Mangual-Santiago*, 562 F.3d 411, 428 (1st Cir. 2009) (noting that, "[i]n establishing the existence of a conspiracy, the government is not bound by approximate start or end-dates listed in the indictment").  Evidence predating the conspiracy period charged in an indictment has been admitted "as relevant to show the conspiracy's existence, its purpose and the significance of later behavior . . . to show the ongoing relationship between co-conspirators and to help the jury understand conspirators' later role during [the] conspiracy." *United States v. Crocker*, 788 F.2d 802, 806 (1st Cir. 1986) (internal citations omitted).  Such evidence has also been admitted as relevant "to prove motive or intent regarding the conspiracy charged . . . or to show the conspiracy's nature and objectives." *Id.*; *see also United States v. Enright*, 579 F.2d 980, 988 (6th Cir. 1978) ("Our circuit and several others have held that evidence of a conspirator's actions, even though they may have occurred before the beginning of the conspiracy alleged in the indictment, are nevertheless admissible as proof of motive or intent, touching upon the conspiracy charged in the indictment.").

Evidence predating the charging period may also be probative of the relationship of the parties and the formation of the conspiracy.  As the First Circuit has explained, "evidence of other bad acts . . . can be admitted to explain the background, formation, and development of the

illegal relationship . . . and, more specifically, to help the jury understand the basis for the co-conspirators' relationship of mutual trust." *United States v. Escobar-de Jesus*, 187 F.3d 148, 169 (1st Cir. 1999). *See also United States v. Balthazard*, 360 F.3d 309, 317-18 (1st Cir. 2004) (upholding evidence of drug transaction that prosecution could not prove occurred during conspiracy period because it was nonetheless admissible "as evidence of the background, formation, and development of the illegal relationship" between the coconspirators); *Crocker*, 788 F.2d at 805-06 (upholding district court's admission of evidence of coconspirator actions taken approximately one month prior to the conspiracy period charged in the indictment because they were "highly relevant to a proper understanding of the origin, scope, nature and objective of the conspiracy as well as to defendant's participation in it").

This is equally true for conspiracies charged under the criminal antitrust laws. *See United States v. Dunham Concrete Prods., Inc.*, 475 F.2d 1241, 1250 (5th Cir. 1973) (allowing testimony of price-fixing attempts over ten years before the charged conspiracy because "[a]lthough criminal defendants may not be convicted for acts occurring prior to the period of time spanned in the indictment, federal courts in antitrust cases have, for the purpose of showing intent, consistently admitted evidence of conduct prior to the time covered by the indictment") (listing cases); *United States v. Cont'l Grp., Inc.*, 456 F. Supp. 704, 719 (E.D. Pa. 1978) (noting in a criminal antitrust action that "[i]t is well settled that evidence of conduct occurring prior to the time period covered by the indictment is admissible for the purpose of demonstrating, *inter alia*, the intent, purpose or aim of the parties to the offense").

Acts deemed inextricably intertwined with the conspiracy are admissible, even if they take place before the charging period. *See United States v. Luster*, 480 F.3d 551, 556 (7th Cir. 2007). "Evidence is inextricably intertwined if it helps to complete the story of the crime by

filling a conceptual or chronological void." *Id.*  This District has held that this determination requires a joint examination with Federal Rule of Evidence 404(b).[2]  *United States v. Perocier*, Crim. No. 08-243 (JAG), 2010 WL 339046, at *1 (D.P.R. Jan. 20, 2010).  In addition, "the evidence must still comport with Rule 403's requirements that its probative value outweighs the danger of unfair prejudice." *Id.* at *4.

The First Circuit has held that, in determining whether evidence is admissible under Rule 404(b), the court must first determine whether the proffered evidence has "special relevance"— in particular, "whether it is relevant to any purpose other than to prove that a defendant has a propensity to commit a crime."  *United States v. Rodriguez-Berrios*, 573 F.3d 55, 64 (1st Cir. 2009); *see also United States v. Aguilar-Aranceta*, 58 F.3d 796, 798 (1st Cir. 1995).  If the court determines that "special relevance" exists, then the court must examine whether the probative value of the evidence substantially outweighs the danger of unfair prejudice, in accordance with Federal Rule of Evidence 403.  *Rodriguez-Berrios*, 573 F.3d at 64.  In addition, the Court in *Perocier* held that evidence that is intrinsic to the crime charged is admissible: "'if the so-called 'intrinsic' act is indeed part of the crime charged, evidence of it will, by definition, always satisfy Rule 404(b).'"  *Perocier*, 2010 WL 339046, at *1 (quoting *United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cir. 2000)); *see also United States v. Gobbi*, 471 F.3d 302, 311 (1st Cir. 2006).

The evidence the United States plans to introduce at trial is both inextricably intertwined with the charged conspiracy and intrinsic to the crime charged.  As such, the evidence is exempt

---

[2] Federal Rule of Evidence 404(b) states:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

from the "other acts" prohibition in Rule 404(b).  The testimonial and documentary evidence reflecting meetings and communications between coconspirators that took place before the charging period relates directly to the same conspiracy that defendant subsequently joined.  Such evidence is admissible because "'[it] help[s] the fact-finder form a more complete picture of the crime.'"  *Perocier*, 2010 WL 339046, at *1 (quoting *United States v. Conner*, 583 F.3d 1011, 1018-19 (7th Cir. 2009)).  Furthermore, the limited testimonial and documentary evidence that predates the charging period is especially relevant because it explains to the jury the history and functioning of the charged conspiracy, the relevance of other coconspirators, and their roles in the conspiracy.  And any acts or statements by defendant himself from the pre-charged period will relate directly to the conspiracy he later joined and will be offered to show his intent and his knowledge of that conspiracy.

The "specially relevant" evidence the United States plans to introduce at trial also passes muster under Federal Rule of Evidence 403.  In balancing whether evidence is admissible under Rule 403, the First Circuit has stated that "'[i]f the evidence brings unwanted baggage, say unfair prejudice or a cognizable risk of confusing the jury, and if the baggage's weight substantially overbalances any probative value, then the evidence must be excluded.'"  *Aguilar-Aranceta*, 58 F.3d at 800 (quoting *United States v. Rodriguez-Estrada*, 877 F.2d 153, 155 (1st Cir. 1989)).  Moreover, "'[b]y design, all evidence is meant to be prejudicial; it is only *unfair* prejudice which must be avoided.'"  *Id.* (quoting *Rodriguez-Estrada*, 877 F.2d at 155).  Indeed, the "discretion to exclude does not arise where the balance between the probative worth and the countervailing factors is debatable; there must be a significant tipping of the scales against the evidentiary worth of the proffered evidence."  *Id.* (internal quotation marks and citation omitted).

Here, the evidence the United States plans to introduce consists of documents and testimony reflective of the conspiracy that defendant ultimately joined.  There is no risk of confusing the jury by admitting this evidence.  This evidence will aid the jury in forming a complete picture of the conspiracy.

## I.     Limitations of Defendant's Character Evidence

As indicated in previous pleadings, defendant may seek to introduce evidence of his good character.  Federal Rule of Evidence 404(a)(2) allows an exception to the general prohibition on character evidence when a criminal defendant introduces evidence of a "pertinent trait."  The word "pertinent" is synonymous with "relevant."  *United States v. Angelini*, 678 F.2d 380, 381 (1st Cir. 1982).  The general trait of "law-abidingness" is pertinent to almost all criminal offenses.  *See id.*  Other traits, however, including defendant's tendency toward truth and veracity, are admissible only when those characteristics have been specifically placed in dispute—when, for example, fraud or falsehood is one of the statutory elements of the crime charged, or when defendant testifies and his credibility is attacked by the prosecution.  *See United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981).

In this case, defendant is charged with knowingly entering into a conspiracy to fix rates and surcharges for Puerto Rico freight services.  Because character traits such as truthfulness and veracity, community involvement, or dedication to a job are not pertinent to this charge, evidence concerning those traits should be excluded.  *See, e.g.*, *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (affirming exclusion of defendant's resume and military service commendations in a mail fraud and perjury trial and noting that "the traits which they purport to show—bravery, attention to duty, perhaps community spirit—were hardly 'pertinent' to the crimes").  Moreover, this Court may limit the number of character witnesses that defendant may

call.  *See* Fed. R. Evid. 403; *Michelson v. United States*, 335 U.S. 469, 480 (1948).  Limiting

testimony on the "shapeless and elusive subject matter" of a defendant's character avoids a

digression into "a veritable Pandora's box of irresponsible gossip, innuendo and smear."

*Michelson*, 335 U.S. at 480.  If character evidence is offered by defendant, the government

should be permitted to rebut those claims with evidence of its own.  *See* Fed. R. Evid.

404(a)(2)(B); *Michelson*, 335 U.S. at 479 ("The price a defendant must pay for attempting to

prove his good name is to throw open the entire subject which the law has kept closed for his

benefit and to make himself vulnerable where the law otherwise shields him.").

### J.    Character Evidence Regarding Testifying Witnesses

Any attempt by defendant to impeach the character of the government's witnesses is

governed by Rule 608, which limits impeachment to opinion or reputation evidence regarding a

witness's character for "truthfulness or untruthfulness."  Fed. R. Evid. 608(a).  Evidence

regarding character traits that do not bear on truthfulness may not be a subject of questioning.

*See, e.g.*, *United States v. Bunchan*, 580 F.3d 66, 71-72 (1st Cir. 2009) (holding that sexual

assault charges against a witness in another matter were not probative of truthfulness in a money

laundering case); *United States v. Holt*, 486 F.3d 997, 1002 (7th Cir. 2007) (holding that

questioning about reprimands for neglect of duty did not bear on truthfulness); *United States v.

Rosa*, 891 F.2d 1063, 1069 (3d Cir. 1989) ("Bribery, however, is not the kind of conduct which

bears on truthfulness or untruthfulness.").

It is within the discretion of the Court to permit inquiry on cross-examination into

specific instances of conduct by a witness "if probative of truthfulness or untruthfulness," but

specific instances of conduct by a witness may not be proved by "extrinsic evidence."  Fed. R.

Evid. 608(b).  Thus, if defendant was permitted to inquire on cross-examination about specific

instances of conduct and was not satisfied with the witness's answers, he would be required to accept those answers and could not offer extrinsic evidence to rebut them. *United States v. Brooke*, 4 F.3d 1480, 1484 (9th Cir. 1993) (stating that a cross-examiner is "stuck with" whatever answer the witness gives when cross-examining about specific instances of conduct to impeach the witness's character); *see also Wilson v. Muckala*, 303 F.3d 1207, 1216-17 (10th Cir. 2002) (holding that Rule 608(b) properly applied to exclude extrinsic evidence of extra-marital affairs); *United States v. Olivo*, 80 F.3d 1466, 1470-71 (10th Cir. 1996) (upholding district court's exclusion of an affidavit of arrest as extrinsic evidence not admissible under Rule 608(b)); *United States v. Herzberg*, 558 F.2d 1219, 1223 (5th Cir. 1977) (Rule 608(b) "prohibits proof by extrinsic evidence even where the prosecutor 'inquires into' prior acts on cross-examination.").

Moreover, defendant would be required to have a good faith basis to believe that the alleged specific acts of conduct occurred before inquiring into them. *See United States v. Whitmore*, 359 F.3d 609, 622 (D.C. Cir. 2004) ("[T]he general rule . . . is that the questioner must be in possession of some facts which support a genuine belief that the witness committed the offense or the degrading act to which the question relates."), *reh'g denied in part*, 384 F.3d 836 (D.C. Cir. 2004) (per curiam).  If the Court determines that defendant does not have a good faith basis that misconduct occurred, he may not ask any questions about the misconduct. Moreover, because the mere mention of misconduct can be prejudicial, some courts have held that attorneys should warn the court and opposing counsel at sidebar before cross-examining a witness about alleged misconduct. *See United States v. Schwab*, 886 F.2d 509, 513-14 (2d Cir. 1989) (holding that it is necessary for attorneys to notify court in advance if they intend to question witness about misconduct under Rule 608(b)).

26

VI.     **EVIDENTIARY ISSUES—DOCUMENTS**

    A.     **Authentication of Documents**

The government sought and obtained defendant's stipulation regarding the authenticity of certain documents that the government may seek to introduce.  As to documents that are not so stipulated, Federal Rule of Evidence 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  The Court then determines whether there is sufficient evidence to allow a reasonable person to believe that the evidence is what it purports to be.  In making this preliminary determination regarding the admissibility of evidence, the Court is not bound by the Rules of Evidence, except those on privilege.  Fed. R. Evid. 104(a).

After this determination, the Court should admit the evidence so that the factfinder can assess what weight it will give to the evidence.  *United States v. Garcia*, 452 F.3d 36, 40 (1st Cir. 2006).  Documents, as well as any other type of evidence, may be authenticated through circumstantial evidence, including "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."  Fed. R. Evid. 901(b)(4); *United States v. Gonzalez-Maldonado*, 115 F.3d 9, 20 (1st Cir. 1997).  Documents can also be authenticated from testimonial evidence and from the face of the documents themselves. Fed R. Evid. 901(b), 902.

Evidence may be authenticated through testimony by a knowledgeable witness who asserts "that an item is what it is claimed to be."  Fed. R. Evid. 901(b)(1).  Typically, written communication can be authenticated by participants in, or recipients of, the written communication who were able to perceive what was communicated and to whom.  *See id.*  The

27

United States plans to introduce at trial certain email communications, including email communications between defendant and witnesses testifying at trial.  Each witness will authenticate relevant email communications based on, among other things, the email's "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."  Fed. R. Evid. 901(b)(4); *see In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008) (government may authenticate a document solely through use of circumstantial evidence, including document's own distinctive characteristics and circumstances surrounding its discovery); *United States v. Smith,* 918 F.2d 1501, 1510 (11th Cir.1990) (same). The First Circuit has held that the plain language of Rule 901 requires only a "reasonable likelihood" that the evidence in question is what its proponent claims it to be.  *See United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994).  Accordingly, an email's distinctive characteristics such as the sender's email address, the recipient's email address, and the email's content are sufficient to authenticate the document.  "[T]he burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be."  *Holmquist*, 36 F.3d at 168.

> **B.      Business Records Admissibility**

The government will offer into evidence certain documents of regularly conducted business activity that meet the "business records" exception to the hearsay rule.  *See* Fed. R. Evid. 803(6).  In some cases, these documents will be offered either by the person who prepared the documents or by an employee of the company that kept them in the ordinary course of business.  The First Circuit has held that there is no requirement that business records be prepared by the entity that has custody of them so long as they were kept in the regular course of

28

that entity's business.  *See United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992).  The touchstone of the business records exception, as well as of all hearsay exceptions, is the reliability of the evidence itself.  *Santiago v. O'Brien*, 628 F.3d 30, 34 (1st Cir. 2010).

As such, the First Circuit has upheld the admissibility of documents created by one company but kept in the ordinary course of business, and produced by, another company.  *Doe*, 960 F.2d at 223 (affirming admissibility under business records exception of document created by telemarketing firm but produced by sports shop).  At trial, documents created by one coastal water freight transportation company that were routinely sent to and relied upon by another company—such as another coastal water freight transportation company involved in the conspiracy—should be admitted under the business records exception.

### C.      Adoptive Admissions Are Admissible under Federal Rules of Evidence 801(d)(2)(B)

Email communications written by others, that defendant then incorporated by forwarding to someone else, are admissible against defendant as adoptive admissions under Federal Rule of Evidence 801(d)(2)(B).  "A party may adopt a written statement if the party uses the statement or takes action in compliance [with] the statement."  *Sea-Land Service, Inc. v. Lozen Intern., LLC*, 285 F.3d 808, 821 (9th Cir., 2002) (quoting 5 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 801.31[3][b], at 801 56 (Joseph M. Laughlin ed., 2d ed 2002); *see generally*, *United States v. Paulino*, 13 F.3d 20, 24 (1st Cir. 1994) ("courts frequently have construed possession of a written statement as an adoption of what its contents reveal") (citations omitted).  In this case, the United States will offer into evidence both emails that defendant received from a coconspirator that he then forwarded to another Crowley employee as well as emails that defendant received from another Crowley employee that he then forwarded to a coconspirator.

29

In both cases, the complete document (containing both the message received by defendant along with his forwarded email) is admissible against defendant as an adoptive admission.

### D.   Vicarious Admissions Are Admissible under Federal Rules of Evidence 801(d)(2)(C) and 801(d)(2)(D)

Defendant frequently ordered a subordinate to send emails and other written communications to a member of the conspiracy.  These emails are admissible against defendant as vicarious admissions under Federal Rules of Evidence 801(d)(2)(C) and 801(d)(2)(D).  A statement offered against a party is admissible under Rule 801(d)(2)(C) if the statement was made by a person authorized by the party to make a statement concerning the subject.  *See, e.g.*, *Long v. Fairbank Farms, Inc.*, 2011 WL 2516378 *9 (D. Me, June 22, 2011).  A statement offered against a party is admissible under Rule 801(d)(2)(D) if the statement was made by the party's agent or employee concerning a matter within the scope of the agency or employment, made during the existence of the relationship.  *See, e.g.*, *Gomez v. Rivera Rodriguez*, 344 F. 3d 103, 116 (1st Cir. 2003); *United States v. Agne*, 214 F.3d 47, 54 (1st Cir. 2000).

### E.   Coconspirator Records Are Admissible under Federal Rule of Evidence 801(d)(2)(E)

Documents sent from one conspirator to another, in furtherance of the conspiracy, are admissible as coconspirator statements under Federal Rule of Evidence 801(d)(2)(E).  *See, e.g.*, *United States v. Alosa*, 14 F.3d 693, 696-97 (1st Cir. 1994).  In *Alosa*, the First Circuit upheld the district court's ruling that a ledger containing evidence of drug transactions was admissible as a coconspirator statement.  *Id.*  The court said that the evidence helped prove the existence of a conspiracy, in particular against a coconspirator for whom there was little direct evidence.  *Id.* at 696.  The First Circuit also upheld admission, as a coconspirator statement, of a tape recording in which one coconspirator, speaking to a third person, referred to his "partner's" (the defendant's)

role in the conspiracy.  *United States v. Eke*, 117 F.3d 19, 21 (1st Cir. 1997).  The court

determined that, because there was sufficient evidence that a conspiracy existed between the

declarant and the defendant and that the statement was made in furtherance of the conspiracy, the

tape recording was admissible as a statement of a coconspirator.  *Id.* at 21-22.

At trial, the government will introduce into evidence emails and other written

communications sent from one member of the conspiracy to another in furtherance of the

conspiracy.  For example, Greg Glova, a coconspirator, sent emails to defendant that the

government will use to prove defendant's knowing participation in the conspiracy.  These

documents are admissible as coconspirator statements because the documents were prepared and

sent during the existence of the conspiracy, by a participant in the conspiracy, for the purpose of

furthering the conspiracy.

### F.       Summary Charts Are Admissible under Federal Rule of Evidence 1006

Because some of the evidence in this case involves similar repetitive conduct over a

significant period of time, the government will offer summary charts pursuant to Federal Rule of

Evidence 1006 to aid the jury's understanding and comprehension of the voluminous evidence.

Summaries are admissible when the underlying documents or data cannot be conveniently

examined on an individual basis.  Fed. R. Evid. 1006; *see Colon-Fontanez v. Municipality of San

Juan*, 660 F.3d 17, 29-30 (1st Cir. 2011) (summaries of work attendance admissible); *United

States v. McElroy*, 587 F.3d 73, 80-82 (1st Cir. 2009) (summaries of payroll receipts and unpaid

taxes admissible); *United States v. Nivica*, 887 F.2d 1110, 1125-26 (1st Cir. 1989) (summaries of

bank credit and debits and total business activity admissible).  As required by Rule 1006, the

United States has made the underlying documents, which are themselves admissible, available

for examination or copying by defendant.  The government will also provide summary charts to

defendant for review seven days prior to trial.


DATED:  February 20, 2015                    Respectfully submitted,


                                             /s/ Diana Kane
                                             Craig Y. Lee, PR Attorney #G01208
                                             Jon B. Jacobs, PR Attorney #G01508
                                             Diana Kane, PR Attorney #G01913
                                             Sonia Mittal, PR Attorney #G01914
                                             Trial Attorneys
                                             U.S. Department of Justice, Antitrust Division
                                             450 Fifth Street N.W., Suite 11300
                                             Washington, DC  20530
                                             Tel:  (202) 307-6694
                                             Fax: (202) 514-6525
                                             Email: diana.kane2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 20, 2015, a true and correct copy of the foregoing

"TRIAL MEMORANDUM OF THE UNITED STATES" was filed electronically and to the best

of my knowledge, information and belief, counsel for defendant will be notified through the

Electronic Case Filing System.

/s/ Diana Kane
Diana Kane, PR Attorney #G01913
Trial Attorney
U.S. Department of Justice, Antitrust Division
450 Fifth Street N.W., Suite 11300
Washington, DC  20530
Tel:  (202) 307-6694
Fax: (202) 514-6525
Email: diana.kane2@usdoj.gov