**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**UNITED STATES OF AMERICA,**
Plaintiff,

v.

Criminal No. 03:13-cr-00162 (DRD)

**THOMAS FARMER,**
Defendant.

**UNITED STATES' OPPOSITION TO**
**DEFENDANT'S SECOND SUPPLEMENTAL MOTION TO DISMISS**

Defendant's Supplemental Motion to Dismiss (Dkt. 345) should be denied.  Defendant's

agreements with his competitors to fix the level and timing of bunker fuel surcharges are not

immune from criminal prosecution.  His arguments to the contrary are based on his repeated

mischaracterization of the charged conduct.  The relevant issue is defendant's collusive

agreements on bunker fuel surcharges, not whether those surcharges were "reasonable" or

"profitable."  The Surface Transportation Board ("STB") approves rates and surcharges as

reasonable and lawful, but it does not authorize competitors to collude on rates or surcharges

before they are submitted for approval.  The Supreme Court decided that such collusion is not

immune from criminal prosecution 93 years ago in *Keogh v. Chicago & N.W. Ry. Co.*, 260 U.S.

156 (1922).  And even if defendant's agreements on bunker fuel surcharges are immune, the

indictment should not be dismissed because he is charged with more than just fixing bunker fuel

surcharges.  He is charged with fixing other components of the freight rate as well.

I.      **The Relevant Issue is Defendant's Collusive Agreements to Fix Bunker Fuel**
        **Surcharges, Not Whether Those Surcharges Were Reasonable or Profitable**

This is not the first time that defendant has briefed the bunker fuel surcharge issue.  On

May 20, 2014, he filed an Omnibus Motion to Dismiss, arguing that the bunker fuel surcharge

evidence violated the First and Fifth Amendments and was barred by the statute of limitations.

(Dkt. 133 at 22-26).  On September 2, 2014, he filed a Motion to Exclude Bunker Fuel Surcharge

Evidence, arguing that STB-approved rates are lawful *per se* and repeating his statute of

limitations argument.  (Dkt. 217 at 1-14).  On January 23, 2015, he filed a Supplemental Motion

to Dismiss repeating that the government was trying to criminalize surcharges approved by the

STB and, for the third time, making his statute of limitations argument.[1]  (Dkt. 312 at 4-8).  This

Opposition responds to defendant's second supplemental motion to dismiss, filed on March 6,

2015, on the bunker fuel surcharge issue.  (Dkt. 345).

The relevant issue regarding bunker fuel surcharges is defendant's agreements with his

competitors to fix those surcharges.  He is charged with participating in a "combination and

conspiracy consist[ing] of a continuing agreement, understanding, and concert of action among

the defendant and his co-conspirators, the substantial terms of which were to fix rates and

surcharges for Puerto Rico freight services."  (Dkt. 1 at ¶ 5).  One of the means and methods of

the advancing this conspiracy was "agreeing during . . . meetings, conversations, and

communications [with competitors] to fix, stabilize, and maintain rates and surcharges charged to

customers of Puerto Rico freight services."  (Dkt. 1 at ¶ 9(c)).  In a Sherman Act conspiracy case,

the agreement is the crime.  *See, e.g.*, *United States v. Socony-Vacuum*, 310 U.S. 150, 224 n.59

(1940); *see also* (Dkt. 335 at 9-10).

At the March 25, 2014 status conference, before defendant filed any of his motions on

this issue, this Court recognized that the proper focus was on the collusive agreement:

> MR. REED:   And during that entire period, there were bunker fuel surcharges
> filed with the regulatory agency by each of the carriers, and it was imposed, I
> guarantee you, with some fervor by the carriers because it was a cost recovery
> mechanism, and they are businessmen, and they want to recover their costs. So

---

[1]  Defendant claims that the United States has not responded to his limitations argument.  (Dkt. 345 at 3 n.1).  In fact, the United States has responded on multiple occasions.  (Dkt. 145 at 6-7; Dkt. 238 at 13-14); *see also* (Dkt. 315 at 5-6) (incorporating previous arguments in opposition).

there's going to be thousands of bunker fuel surcharge impositions on thousands of customers for each of the carriers going back to 2002. And the only reason I raise that, Your Honor, is –

THE COURT: Well, so that would be antitrust, right?

MR. REED: We think it is not, but, I mean –

THE COURT: If there's an agreement -- you don't think there's not?

MR. REED: You can't have -- the agreement here is with the regulatory agency. The agreement with the customer is, quite frankly, they are just passing through what the legally charged or legally approved rate is. So we don't think that there's any room here for a role in the antitrust department. It is a lawful rate that's been approved by the federal government, the same people who write the paychecks for these gentlemen and have the same antitrust jurisdiction. And we don't think that charging below that rate, at that rate or below, is a violation of any law.  It's been approved. You can't get a safer harbor than that.

(Dkt. 80 at 19-20).  In response, the government clarified that the charged conduct was

defendant's collusive agreements, not the reasonableness of the surcharges or whether Crowley

was over-recovering its fuel costs:

> MR. LEE: . . .
>
> As far as the bunker fuel, Your Honor, having sat through the [Peake] trial, I think Your Honor is well aware that the collusion alleged for the bunker fuel isn't after they are filed with the government agency. It is before they are filed. You saw the evidence, you heard the testimony, that before any other carriers wanted to file, they would talk and say "Hey, we want issues increased, will you follow, will you match this increase, when should we issue it together." And that's what makes it illegal, the collusion prior to filing it.
>
> And it doesn't matter whether it was recovery, it doesn't matter whether it was reasonable. All that matters, it was an illegal agreement among competitors to fix a price. And fuel was a component of the price.

(Dkt. 80 at 26).

Defendant has repeatedly mischaracterized the charged conduct in his many briefs on this

issue in the past year.  Instead of focusing on the relevant issue -- defendant's collusive

agreements -- he has incorrectly argued that the Court should focus on issues such as: (i) the

"reasonableness" of Crowley's surcharges, *e.g.,* (Dkt. 217 at 8, 10); (ii) whether Crowley

"profited" from the surcharges by recovering more than its fuel costs, *e.g,* (Dkt. 133 at 26; Dkt.

217 at 11); (iii) agreements among competitors to lobby the STB to approve the surcharges,

which defendant claims would be protected by the First Amendment (Dkt. 133 at 22-23); and

(iv) the fact that the STB approved the surcharges, which defendant claims immunizes

defendant's collusive agreements from criminal prosecution, *e.g.,* (Dkt. 217 at 10; Dkt. 312 at 5;

Dkt. 345).

This Court has already ruled that issues of "reasonableness" and "profitability" have no

place in this case: "as the instant indictment alleges a per se violation of the Sherman Act, the

defense . . . is prohibited from arguing that any purported agreements set reasonable, fair or

competitive prices; created real or imagined efficiencies; or were necessary to avoid ruinous

competition." (Dkt. 126).  The Court should reject defendant's invitation to focus on issues of

reasonableness and profitability when deciding defendant's motion to dismiss.  Instead, it should

focus exclusively on whether defendant's agreements with his competitors are immune from the

antitrust laws.  As explained in the next section, they are not.

## II.    Defendant's Agreements with His Competitors to Fix Bunker Fuel Surcharges Are Not Immune from the Antitrust Laws

Defendant relies primarily on *Credit Suisse Sec. (USA) LLC v. Billing*, 551 U.S. 264

(2007), to support his immunity argument.  In *Billing,* the Supreme Court held that where

regulatory statutes are silent on the applicability of the antitrust laws, courts must determine if

those laws have been implicitly repealed.  The hurdle is a high one: "an implied repeal of the

antitrust laws [is] found only where there is a plain repugnancy between the antitrust and

regulatory provisions." *Id.* at 272 (quoting *Gordon v. New York Stock Exch., Inc.,* 422 U.S. 659,

682 (1975)) (quotation marks omitted).  The factors to consider are whether: (i) the conduct is

"squarely within the heartland of [the agency's] regulations"; (ii) there is "clear and adequate

[agency] authority to regulate"; (iii) there is "active and ongoing agency regulation"; and (iv)

there is a "serious conflict between the antitrust and regulatory regimes." *Id.* at 285.

There is no conflict, much less a repugnant one, between the power of a regulatory

agency like the STB to approve rates and the power of the Department of Justice to enforce the

antitrust laws with criminal sanctions.  The Supreme Court settled that issue 93 years ago in

*Keogh v. Chicago & N.W. Ry. Co.*, 260 U.S. 156 (1922).  In that case, a shipper sued railroads

belonging to the Western Trunk Line Committee, alleging that those railroads had met and

agreed on the freight rates they would charge customers.  They then filed those rates with the

Interstate Commerce Commission ("ICC"), the predecessor to the STB, which approved the rates

as reasonable and lawful.  260 U.S. at 159-60.  In an opinion written by Justice Brandeis, the

Supreme Court held that the shipper's cause of action was precluded by the ICC's approval, but

also noted that the government could still proceed and prosecute the conduct criminally:

> All the rates fixed were reasonable and nondiscriminatory.  That was settled by
> the proceedings before the Commission. . . . But under the Anti-Trust Act a
> combination of carriers to fix reasonable and nondiscriminatory rates may be
> illegal; and, if so, the government may have redress by criminal proceedings . . . .
> The fact that these rates had been approved by the Commission would not, it
> seems, bar proceedings by the government.

*Id.* at 161-62.  Sixty-four years later, the Supreme Court was even more definitive:

> The alleged collective activities of the defendants in both cases [*Keogh* and
> *Square D*] were subject to scrutiny under the antitrust laws by the Government
> and to possible criminal sanctions or equitable relief. *Keogh* simply held that an
> award of treble damages is not an available remedy for a private shipper claiming
> that the rate submitted to, and approved by, the ICC was the product of an
> antitrust violation.

*Square D v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 422 (1986).  Numerous courts

of appeal have issued opinions holding the same.  *McCray v. Fid. Nat'l Title Ins. Co.,* 682 F.3d

229, 237 (3d Cir. 2012) ("[T]he [filed rate] doctrine itself does not eliminate 'scrutiny under the

antitrust laws by the Government and ... possible criminal sanctions or equitable relief.'"

(quoting *Square D,* 476 U.S. at 422)); *Texas Commercial Energy v. TXU Energy, Inc.,* 413 F.3d

503, 508 (5th Cir. 2005) (same); *Florida Mun. Power Agency v. Florida Power & Light Co.,* 64

F.3d 614, 616 (11th Cir. 1995) ("filed rate doctrine does not bar criminal or injunctive antitrust

actions"); *In re Hawaiian & Guamanian Cabotage Antitrust Litigation,* 647 F. Supp. 2d 1250,

1262 (W.D. Wash. 2009) (price fixing of freight rates can "be redressed in criminal proceedings

or by way of injunction" (citing *Square D,* 476 U.S. at 161-62)).

The *Billing* factors do not support a finding of immunity here.  Defendant contends that

"[t]he conduct is both directed at the Board, approved by the Board, and subject to subsequent

adjudication by the Board."  (Dkt. 345 at 14).  But again, "the conduct" he is talking about refers

to the surcharges themselves and whether they are reasonable or profitable.  The STB has the

authority to review and approve rates and surcharges and, once approved, they become the only

legal rate that shipping companies can charge.  *Ocean Logistics Mgmt., Inc. v. NPR, Inc.,* 38 F.

Supp. 2d 77, 90 (D.P.R. 1999).  But the STB does not have the power to preempt federal courts

from presiding over criminal prosecutions alleging collusive agreements among competitors.

*Keogh, Square D,* and the other cases recognizing the limitations of the filed rate doctrine remain

good law today.

Even the ICC itself, as the predecessor to the STB, has recognized this principle.  In

*Puerto Rico Mfrs. Ass'n v. Trailer Marine Transport Corp.,* No. 40343, 1990 WL 300490 (I.C.C.

July 24, 1990), the ICC heard a challenge to a 12 percent rate increase proposed by three

shipping companies in the Puerto Rico trade lane.  The complainants alleged that the shipping

companies collusively agreed to increase rates, and that the Commission should consider

collusion when assessing the reasonableness of the rates.  The Commission agreed, but also

explicitly stated that antitrust litigation in the federal courts could proceed as well:

> If there is collusion on the part of the Defendants, then their conduct is not
> permissible. It is relevant to the Commission whether the Defendants act illicitly
> because the Commission must preserve the integrity of its regulatory process,
> including that pertaining to the filing of tariffs.
>
> . . . One proper way the Commission discharges [its] responsibilities is to find,
> upon allegation, whether rates that are in effect on account of collusive conduct
> are unreasonable. The examination of an effective tariff for possible collusion in
> its establishment is not beyond the bounds of a reasonableness determination.
>
> . . . Therefore, the Commission has the authority to permit a hearing on the
> reasonableness of rates based on allegations of carriers' collusive behavior. This
> is not an attempt to preempt the Federal courts' authority in the antitrust area
> which is a separate function.

*Id.* at \*5-\*6 (emphasis added).

Defendant predicts that a parade of horribles will ensue if the government is allowed to

enforce the antitrust laws in this industry with criminal sanctions: carriers will file for the highest

possible surcharges as quickly as possible, and the Board will stop approving surcharge

applications that match the rates of competing carriers.  (Dkt. 345 at 19-20).  Yet defendant

offers no evidence that such things have occurred since April 17, 2008, when the government's

criminal investigation in the Puerto Rico trade lane became public.  The government's criminal

antitrust enforcement program has the power, post conviction, to seek criminal fines and jail

terms.  15 U.S.C. § 1; 18 U.S.C. § 3571(c)-(d).  It does not seek to change existing rates or

surcharges in the market or affect the STB's exercise of its regulatory power in any way.

### III.     Even if Defendant's Collusive Agreements to Fix Bunker Fuel Surcharges Are Immune from the Antitrust Laws, the Indictment Should Not be Dismissed

The Indictment does not allege a separate bunker fuel surcharge conspiracy.  The

defendant is charged with fixing "rates and surcharges for Puerto Rico freight services." (Dkt. 1

¶ 5) (emphasis added).  The government clarified long ago that defendant's agreements on the level and timing of bunker fuel surcharges was only one component of the overall conspiracy. (Dkt. 54 at 2).  Therefore, even if his collusive agreements on bunker fuel surcharge increases are immune from the antitrust laws, dismissal of the indictment is not an appropriate remedy. *See, e.g.*, *United States v. Ochs*, 842 F.2d 515, 527-28 (1st Cir. 1988) (upholding sufficiency of indictment charging a conspiracy to commit mail fraud where one of three means and methods of conspiracy charged did not state an offense).

## CONCLUSION

Accordingly, defendant's second Supplemental Motion to Dismiss (Dkt. 345) should be denied.

DATED: March 20, 2015                               Respectfully submitted,

 /s/ Jon B. Jacobs                
Craig Y. Lee, PR Attorney #G01208
Jon B. Jacobs, PR Attorney #G01508
Diana Kane, PR Attorney #G01913
Sonia Mittal, PR Attorney #G01914
Trial Attorneys, Antitrust Division
U.S. Department of Justice
450 5th St., NW Suite 11300
Washington, DC 20530
Tel: (202) 514-5012
Fax: (202) 514-6525
Email: jon.jacobs@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2015, a true and correct copy of the foregoing

"UNITED STATES' OPPOSITION TO DEFENDANT'S SECOND SUPPLEMENTAL

MOTION TO DISMISS" was filed electronically and to the best of my knowledge, information

and belief, counsel for defendant will be notified through the Electronic Case Filing System.

_/s/ Jon B. Jacobs _____
Jon B. Jacobs, PR Attorney #G01508
Trial Attorney
U.S. Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 11300
Washington, D.C. 20530
Tel.: (202) 514-5012
Fax: (202) 514-6525
Email: jon.jacobs@usdoj.gov